**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| MAGDALENA BOJKO AND COURTNEY HEEREN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | No. 22 C 6728 |
| Plaintiffs, | Judge Thomas M. Durkin |
| v. | |
| PIERRE FABRE USA INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs bring this putative class action relating to Defendant Pierre Fabre USA Inc.'s dry shampoo products that allegedly contain benzene. Defendant moves to dismiss on several grounds. *See* R. 14. For the reasons set forth below, that motion is granted in part and denied in part.

**Background**

Pierre Fabre USA ("Defendant") manufactures, markets, and sells dry shampoo products throughout the United States under the Klorane brand ("Products"). R. 1 ("Compl.") ¶¶ 12, 14. Magdalena Bojko and Courtney Heeren ("Plaintiffs") are Illinois citizens who purchased certain of the Products from retailers in August 2021 and May 2022. *Id.* ¶¶ 9, 10.

In October 2022, Valisure, an independent analytical laboratory, filed a Citizen Petition with the U.S. Food and Drug Administration ("FDA") regarding levels of

benzene in dry shampoos. *Id.* ¶¶ 41, 44.[1] Valisure tested for benzene in 34 brands of dry shampoo and found that ten brands had benzene levels of 2 parts per million ("ppm") or higher. *Id.* ¶¶ 45, 48, 49. Specifically, Valisure detected benzene concentrations between 0.20 and 5.72 ppm in four out of the seven samples of the Products tested. *Id.* at ¶ 50; R. 14-1. Defendant has not voluntarily recalled the Products to date. Compl. ¶ 54.

Plaintiffs allege that benzene is a carcinogen, and exposure in any amount is potentially harmful. *Id.* ¶¶ 18–28, 33–39. The FDA has advised that benzene should not be used in manufacturing drug products because of its unacceptable toxicity. *Id.* ¶¶ 22, 30. If its use is unavoidable to produce a drug product that has a significant therapeutic effect, then its benzene levels must be restricted to 2 ppm. ¶¶ 22, 32. But according to Plaintiffs, because dry shampoos are not drugs, any level of benzene is unacceptable. *Id.* ¶ 40. Thus, Plaintiffs allege that the presence of benzene renders the Products misbranded, adulterated, and illegal to sell under federal and state law. *Id.* ¶¶ 65, 66, 94. And had they known that the Products contained or risked containing benzene, Plaintiffs allege they would not have purchased them or would have paid less for them. *Id.* ¶¶ 70, 83, 94, 103, 108.

---

[1] The Court takes judicial notice of Valisure's Citizen Petition to the FDA, *see* R. 14-1, which is referenced and cited throughout the Complaint and central to the allegations therein. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 n.1 (7th Cir. 2021) (explaining that district courts may consider documents attached to a motion to dismiss "when they are referenced in the complaint and central to the plaintiff's claim").

Plaintiffs bring claims for violations of the Illinois Consumer Fraud Act ("ICFA"), other States' consumer fraud acts, breaches of express and implied warranties, and unjust enrichment. Defendant has moved to dismiss on several grounds, including standing, express preemption, safe harbor provisions, pre-suit notice and privity for the warranty claims, and failure to state a claim.

## Legal Standard

I.     Rule 12(b)(1)

A party may move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Standing is "an essential ingredient of subject matter jurisdiction."[2] *Bazile v. Finance Sys. Of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). Standing requires that "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, a plaintiff must clearly allege facts demonstrating each element." *Id.* (citation omitted)

II.     Rule 12(b)(6)

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must

---

[2] Although Defendant does not explicitly raise its standing argument under Rule 12(b)(1), the Court understands it to be brought under that Rule. *See Bazile v. Finance Sys. Of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.,* 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Discussion

### I.     Standing

The Court must first address Defendant's argument that Plaintiffs do not have Article III standing. *See In Re Helmstetter*, 44 F.4th 676, 679 (7th Cir. 2022) (describing Article III standing a threshold jurisdictional issue); *Flynn v. FCA U.S. LLC*, 39 F.4th 946, 951 (7th Cir. 2022) ("[J]urisdictional challenges come before merits challenges[.]").

Defendant facially challenges Plaintiffs' standing based on the allegations in the Complaint. When evaluating a facial challenge to standing, courts apply the same standard as reviewing a motion to dismiss under Rule 12(b)(6). *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citations omitted). As such, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of Plaintiffs. *Id.*

Defendant argues that Plaintiffs fail to plausibly allege an injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, Plaintiffs claim that they would not have purchased the Products or would have paid less for them had they known that the Products contained or risked containing benzene. According to Defendant, Plaintiffs' alleged economic injuries were not particularized to them because they do not allege that the Products *they actually purchased* contained benzene.

To be sure, there is no allegation that Plaintiffs or Valisure tested the specific bottles of dry shampoo that Plaintiffs purchased or used. Rather, they allege that all Products—including the ones they purchased—contain benzene. Compl. ¶¶ 4, 10–11, 54, 71. The question is whether that allegation is plausible.

Plaintiffs point to Valisure's testing in support. Valisure detected benzene in four out of the seven samples of the Products tested, in amounts ranging from 0.2

ppm to 5.7 ppm. *See* R. 14-1 at 19. Focusing on the types of dry shampoo that Plaintiffs purchased, one of the two samples of Klorane Dry Shampoo with Nettle Oil-Control and three of the four samples of Klorane Dry Shampoo with Oat Milk had detectable levels of benzene. *Id.* at 13–18. And Plaintiffs allege that benzene exposure in any amount is dangerous. Compl. ¶¶ 33–40.

When construed in Plaintiffs' favor, these allegations "nudge" their claim that the Products they purchased were defective "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570. A majority of the samples tested contained benzene. *See In re Abbott Infant Formula Prods. Liability Litig.*, 2023 WL 3585759, at *5 (N.D. Ill. May 22, 2023) (holding that because plaintiff plausibly alleged that at least most of Abbott's products contained heavy metals based on test results, it follows that she plausibly alleged that the products she purchased had heavy metals). And the tested Products were of the same type that Plaintiffs purchased. *See Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-CV-1040, 2023 WL 2477499, at *4, 6 (D. Conn. Mar. 13, 2023) (plaintiffs plausibly alleged sunscreen they purchased contained or risked containing benzene where testing showed the same product contained benzene).

The out-of-circuit authorities that Defendant cites are not binding on this Court. And, in any case, they are largely distinguishable. In *In re Johnson & Johnson Talcum Powder Prods. Litig.*, 903 F.3d 278 (3d Cir. 2018), the plaintiff did not allege that the economic benefit she received from the baby powder was anything less than the price she paid. Here, Plaintiffs allege just the opposite. *See* Compl. ¶ 70 ("If

Defendant had disclosed to Plaintiffs and putative Class Members that the Products contained or risked containing benzene and thus risked users to benzene exposure, Plaintiffs and putative Class Members would not have purchased the Products or they would have paid less for the Products."); *id.* ¶ 71 (Plaintiffs and Class members were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain harmful levels of benzene . . . ."). Likewise, in *Wallace v. ConAgra*, 747 F.3d 1025, 1030 (8th Cir. 2014) there was "no particularized reason to think that" the plaintiffs' own Hebrew National packages were defective because the plaintiffs made no allegations regarding the number of packages that were tainted with non-kosher beef. Whereas here, Valisure's test results, when construed in Plaintiffs' favor, plausibly suggest that the Products they purchased contained benzene.[3]

However, this Court is not convinced that Plaintiffs' theory of economic injury holds water if based merely on the *risk* that the Products they purchased contained benzene. Contrary to Plaintiffs' contention, *In re Aqua Dots Products Liability Litig.*, 654 F.3d 748 (7th Cir. 2011) does not go that far. In *Aqua Dots*, the Seventh Circuit recognized that plaintiffs who had purchased a dangerously defective toy asserted an injury in fact by claiming to have "paid more for the toys than they would have, had

---

[3] The Court acknowledges that the results of Valisure's testing are relatively thin, considering the small number of samples tested and the varying amounts of benzene detected across those samples. It may very well be the case that subsequent testing of the Products, perhaps with a larger sample size, or other expert discovery calls into question or even contradicts Valisure's results. But at this stage, when construed in Plaintiffs' favor, the results plausibly suggest that the Products Plaintiffs purchased contained benzene.

they known of the risks the beads posed to children." *Id.* at 751. But the defect was uniform. That is, all products had the toxic beads. Indeed, in *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968 (7th Cir. 2016), the Seventh Circuit was skeptical that the plaintiffs' claim that the cost of their meals was an injury because they would not have dined at P.F. Chang's had they known of its poor data security would be sufficient for standing. The Court noted that "such arguments have been adopted by courts only where the product itself was defective or dangerous and consumers claim they would not have bought it (or paid a premium for it) had they known of the defect." *Id.* (citations omitted). Here, if Plaintiffs received benzene-free Products, "there was no defect or risk of harm in the products they purchased, and therefore no overpayment or injury." *Smith-Brown v. Ulta Beauty, Inc.*, No. 18 C 610, 2019 WL 932022, at *4 (N.D. Ill. Feb. 26, 2019) (holding that plaintiffs did not have standing to assert claims arising out of the purchase of new make-up products based on the risk that they might have received unsanitary used products). But because Plaintiffs have plausibly alleged that the Products they purchased had benzene, they have adequately alleged an injury in fact.

Defendant also contends that Plaintiffs lack both Article III and "statutory standing" to bring claims under the consumer fraud acts of other States because they do not live and did not purchase the Products outside of Illinois. Plaintiffs respond that this argument is, in actuality, about whether they can satisfy the requirements of Federal Rule of Civil Procedure 23, and is thus premature at this stage. The Court agrees and joins numerous other courts in this District in finding that the best course

is to defer this issue to the class certification stage. *See, e.g., Shirley v. Reynolds Consumer Prods., LLC*, No. 22 C 278, 2022 WL 13831598, at *3 (N.D. Ill. Oct. 21, 2022) (collecting cases and deferring issue of plaintiff's standing to bring claims on behalf of class members in other states to the class certification stage); *Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *8 (N.D. Ill. Aug. 1, 2018) ("In light of the growing weight of authority that treats 'disjunctures' between a class representatives' claims and those of absent class members as a problem to be analyzed under the rubric of Rule 23, rather than the doctrine of statutory standing, the court will do the same here." (cleaned up)); *see also Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859 (N.D. Ill. 2021) (declining to dismiss multi-state class claims on standing grounds, noting that "[w]hat MAM is really challenging is whether Freeman (or, actually, any Illinois resident who bought pacifiers only in Illinois) can satisfy the Civil Rule 23 class-certification requirements as applied to a nationwide and multi-state class").

Defendant further argues that Plaintiffs forfeited the issue of "statutory standing" by failing to discuss it or cite pertinent authority in their response. But that is not how the Court reads Plaintiffs' brief. Plaintiffs refer to standing generally, not limited to Article III. *See* R. 26 at 15 (arguing that they "may maintain their claims under other States' consumer protection acts because the issue is one of adequacy under Rule 23, not standing"). And in one of the cases Plaintiffs cite in support, the court discussed whether the fact that plaintiffs had not suffered injuries outside of Illinois "implicate[d] standing, whether the relevant principle of standing

is labeled constitutional, prudential, or statutory." *See Benson v. Newell Brands*, No. 19 C 6836, 2020 WL 1863296, at *4 (N.D. Ill. Apr. 14, 2020). As such, at this stage, Plaintiffs have adequately pleaded standing to pursue each of their claims.[4]

II.     Preemption

Defendant also argues that Plaintiffs' claims are expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA expressly preempts any state law "requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter[.]" *See* 21 U.S.C. § 379s(a).[5]

A.  Omission Claims

The Court begins with Plaintiffs' claims that Defendant violated the ICFA and other States' consumer fraud acts by making material omissions about the presence of benzene in the Products. Specifically, Plaintiffs claim that the failure to list benzene as an ingredient and the lack of any warning about the presence of benzene on the labels is misleading. Compl. ¶¶ 91–93.

---

[4] Defendant also argues that Plaintiffs lacked standing to seek injunctive relief. In response, Plaintiffs voluntarily dismiss their claims for injunctive relief. *See* R. 26 at 2 n.1.

[5] Plaintiffs argue that the starting point for the preemption analysis is "the assumption that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citations omitted). But there is no such presumption where, as here, the statute has an express preemption clause. *See Puerto Rico v. Franklin Cal. Tax–Free Trust*, 579 U.S. 115, 125 (2016) (citing *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)).

Federal law prohibits the "misbranding of any . . . cosmetic in interstate commerce." 21 U.S.C. § 331(b). A cosmetic is misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 362(a). Relevant here, federal regulations require that the label of a cosmetic "bear a declaration of the name of each ingredient in descending order of predominance." 21 C.F.R. § 701.3(a). An "ingredient" is defined as "any single chemical entity or mixture used as a component in the manufacture of a cosmetic product." 21 § C.F.R. 700.3(e). "Incidental ingredients" are substances with "no technical or functional effect in the cosmetic but are present by reason of having been incorporated into the cosmetic as an ingredient of another cosmetic ingredient," and "substances added to a cosmetic during processing." 21 C.F.R. § 701.3(l)(1)-(2). "Incidental ingredients" are not required to be listed on the label if they are "present in a cosmetic at insignificant levels" and "have no technical or functional effect in the cosmetic." 21 C.F.R. § 701.3(1).

Here, Plaintiffs allege that benzene is a contaminant, not an ingredient. *See, e.g.*, Compl. ¶ 52 ("[B]enzene "is not a requisite component of manufacturing or packaging dry shampoo."); *id.* ¶ 53 ("The Products are not designed to contain benzene[.]"); *id.* ¶ 80 (describing benzene "contamination" in the Products). And because benzene is not an ingredient, it cannot be an incidental ingredient. Thus, the FDCA does not require Defendant to include benzene in the Products' ingredients list.

Plaintiffs argue that their omission claims are "identical to the applicable provisions of the FDCA dealing with misbranding in cosmetics and the requirement

11

that a manufacturer refrain from false and misleading labeling." *See* R. 26 at 6. But Plaintiffs allege that the Products are misbranded because they do not include benzene in the ingredients list. And, as discussed above, benzene is not an "ingredient" that must be listed under the applicable federal regulations. So, for Plaintiffs to prevail on these omission-based claims, state law would impose a requirement *in addition to* what federal law requires. That is what 21 U.S.C. § 379s(a) bars. *See Henning v. Luxury Brand Partners, LLC*, No. 22-cv-07011, 2023 WL 3555998, at *5 (N.D. Cal. May 11, 2023) (state law claims premised on allegations that defendant failed to list benzene in dry shampoo products' ingredients list were preempted by the FDCA); *Barnes v. Unilever United States Inc.*, No. 21 C 6191, 2023 WL 2456385, at *9 (N.D. Ill. Mar. 11, 2023) (deceptive practices claims based on alleged omissions were expressly preempted).

Plaintiffs cite *Reid v. GMC Skin Care USA Inc.*, No. 8:15 CV 277, 2016 WL 403497, at *10 (N.D.N.Y. Jan. 15, 2021) for the proposition that if the language in the Products' packaging is misleading, state law requirements parallel, rather than add to, federal requirements and thus are not preempted. But that case involved a claim that the defendant misrepresented the *effectiveness* of the product, which was a "traditional claim[] of consumer misrepresentation, not an attempt to enforce the FDCA's labeling requirements." *Id.* Here, Plaintiffs allege that the Products are misbranded because their labels omit benzene from the ingredients list, not because they are not as effective as their labels claim. *See Barnes*, 2023 WL 3555998, at *9. For the same reason, *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189–90 (C.D.

Cal. 2011), which also involved allegedly misleading efficacy claims, is inapposite. Accordingly, to the extent Plaintiffs' claims rest on the omission of benzene from the ingredients list, they are dismissed.

Plaintiffs further argue that "nothing in the FDCA prohibits Defendant from disclosing the presence of benzene or a warning regarding its cancer-causing properties elsewhere on its label." R. 26 at 7–8. Relatedly, federal regulations provide that "[t]he label of a cosmetic product shall bear a warning whenever necessary or appropriate to prevent a health hazard that may be associated with the product." 21 C.F.R. § 740.1(a). Defendant emphasizes that the cases relied on by Plaintiffs in support of this argument involve conflict preemption,[6] not express preemption. *See Wyeth v. Levine*, 555 U.S. 555 (2009); *Newman v. McNeil Consumer Healthcare*, No. 10-cv-01541, 2012 WL 39793 (N.D. Ill. Jan. 9, 2012); *Caraker v. Sandoz Pharms. Corp.*, 172 F. Supp. 2d 1018 (S.D. Ill. 2001). That is true. *See Barnes*, 2023 WL 2456385, at *9 (distinguishing *Wyeth*, *Newman*, and *Caraker* on that basis in rejecting plaintiff's argument that nothing prohibited defendant from warning about benzene on its OTC drug label). But here, unlike in *Barnes*, the requirement in 21 C.F.R. § 740.1(a) applies to the Products. *Id*. And Defendant does not explain how Plaintiffs' claim that the Products' labels fail to warn consumers about the presence of benzene is different from or in addition to the requirement in 21 C.F.R. § 740.1(a).

---

[6] "Conflict preemption applies when there is an actual conflict between state and federal law such that it is impossible for a person to obey both, or when state law stands as an obstacle to fully accomplishing the objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 646–47 (7th Cir. 2019)

*See Henning*, 2023 WL 3555998, at *6 (holding that claim based on a lack of warning about the presence of benzene in dry shampoo products was not expressly preempted in light of 21 C.F.R. § 740.1). Therefore, claims based on the lack of warning on the Products' labels about the presence of benzene are not expressly preempted.

### B. Adulteration Claims

Next are Plaintiffs' claims that Defendant sold Products allegedly adulterated with benzene in violation of the ICFA and other States' consumer fraud acts. Federal law prohibits the manufacture and sale of adulterated cosmetics. 21 U.S.C. § 331. A cosmetic is "adulterated" if it "bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual," among other things. 21 C.F.R. § 361(a).

Defendant first argues that Plaintiffs have not pleaded a separate unfair practice claim under the ICFA. In Defendant's view, the only "unfair" conduct Plaintiffs complain about is allegedly deceptive omissions. However, conduct can be both deceptive and unfair. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). And the Complaint is not as limited as Defendant makes it out to be. Plaintiffs do not simply call Defendant's alleged omissions unfair. Rather, Plaintiffs separately allege that the Products are adulterated because they contain benzene and that Defendant inadequately tested for benzene in the Products. Compl. ¶¶ 65, 81, 95; *see also Barnes*, 2023 WL 2456385, at *2 (holding that complaint included ICFA

claim premised on unfair practices where plaintiff alleged that Unilever put adulterated products into the marketplace without adequate testing).

Defendant further contends that Plaintiffs must point to "some other, *applicable*, federal requirement that renders an adulteration claim parallel to federal law." R. 31 at 5. But Defendant does not cite any authority for that proposition. Plaintiffs allege that the Products "contain a poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling," in the form of benzene. Compl. ¶ 65. And while Defendant correctly points out that *Barnes* involved the defendant's alleged failure to comply with the FDA's CGMPs, that case involved a statute relating to the adulteration of over-the-counter drugs, which is not at issue here. 2023 WL 2456385, at *5 (citing 21 U.S.C. § 351(a)(1)(B) (establishing that drugs not produced in compliance with CGMPs "shall be deemed adulterated")). Thus, because Plaintiffs' claims based on the sale of allegedly adulterated Products do not rely on a state law requirement that is different from or in addition to federal requirements, they are not expressly preempted.

III.    ICFA

    A.  Safe Harbor Provision

Defendant further argues that the ICFA's safe harbor provision bars Plaintiffs' claims. That provision precludes non-personal-injury claims predicated on "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1). In other words, the ICFA "will not impose higher disclosure

requirements on parties than those that are sufficient to satisfy federal regulations." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 941 (7th Cir. 2001). The safe harbor exception is an affirmative defense, which is typically not an appropriate basis for dismissal pursuant to Rule 12(b)(6). However, an affirmative defense can serve as a basis for Rule 12(b)(6) dismissal where the plaintiff's complaint alleges everything necessary to establish the affirmative defense. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 938 (7th Cir. 2015).

In view of the Complaint here, the Court cannot conclude that federal law "specifically authorizes" the alleged conduct at issue. Defendant's sale of allegedly adulterated Products is not "specifically authorized." 21 U.S.C. § 331(a) (prohibiting the sale of cosmetics that are "adulterated"); *see also Barnes*, 2023 WL 2456385, at *10 n.4 (noting that safe harbor argument would fail as to unfair practice claim because sales of adulterated drugs are not "specifically authorized" by the FDA). Nor is the lack of any warning about the presence of benzene in the Products "specifically authorized." 21 U.S.C. § 331(a) (prohibiting the sale of cosmetics that are "misbranded"); 21 C.F.R. § 740.1(a) ("The label of a cosmetic product shall bear a warning whenever necessary or appropriate to prevent a health hazard that may be associated with the product."). The fact that federal law allows for the omission of benzene from the ingredients list does not "implicitly provide[] specific authorization not to make any additional disclosures" on the labels about its presence in the Products. *See Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 254 (2005) (distinguishing

16

*Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 17 (1986)). As such, the safe harbor provision does not warrant dismissal of the ICFA claim.

### B. Plausibility

Defendant also challenges the plausibility of Plaintiffs' allegations with respect to several elements of the ICFA claim. To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Pub. Storage, Inc.*, 395 Ill. App. 3d 342, 353 (2009); *see also Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996).

ICFA claims may be premised on either, or both, deceptive and unfair conduct, "but the two categories have different pleading standards." *Vanzant*, 934 F.3d at 738. Claims resting on allegations of unfair conduct are subject to the Rule 12(b)(6) standard, while claims based on allegations of deceptive conduct must be pleaded with particularity under Rule 9(b). *Id.* Under Rule 9(b), the complaint must identify the "who, what, when, where, and how" of the alleged fraud. *Id.*

### 1. Actual Damages

First, Defendant argues that Plaintiffs have not alleged actual damages. "[A]ctual loss may occur if the seller's deception deprives the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the property." *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Plaintiffs allege that the

17

presence of benzene rendered the Products "worthless" and that they would not have bought the Products or would have paid less for the Products had they known the Products contained or risked containing benzene. Compl. ¶¶ 70, 72, 108, 110. In so alleging, Plaintiffs adequately plead actual damages. *See Barnes*, 2023 WL 2456385, at *4 (holding that plaintiffs sufficiently pleaded actual damages by alleging that had they been aware of the true nature of the products, they would have paid less for them or not purchased them at all). Defendant's argument to the contrary rests on its contention that Plaintiffs have only pleaded that *some* of the Products contain benzene. For the reasons previously discussed, the Court finds that Plaintiffs have plausibly alleged that all of the Products, including those they purchased, contain benzene. *See In re Abbott*, 2023 WL 3585759, at *9 (holding that plaintiff alleged actual damages for the same reason that the Court had Article III standing) (citations omitted). As such, Plaintiffs have sufficiently pleaded actual damages.

### 2. Deceptive Acts

Next, Defendant contends that Plaintiffs fail to adequately allege deceptive acts. In response, Plaintiffs characterize their deceptive practices claim as alleging both affirmative misrepresentations and omissions.

Starting with the alleged misrepresentations, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober*, 246 F.3d at 938. A plaintiff must show "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir.

18

2020). According to Plaintiffs, Defendant falsely represented that the Products (1) contained *only* the ingredients listed in the ingredients section of the labels and (2) were tested for safety, despite no reasonable efforts to do so.

The problem is that Plaintiffs do not connect these allegations with any language or images on the Products' labels. *See Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 737 (7th Cir. 2014) (explaining that Rule 9(b) requires the plaintiff to state "the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff"). For example, Plaintiffs do not allege that the labels stated that the Products were "safe," "lab-tested," "benzene free," "free from byproducts," or the like. *See Henning*, 2023 WL 3555998, at *7 (dismissing misrepresentation-based claims based where plaintiff did not point to any feature on the dry shampoo products' labels, such as a word or image that suggested that defendant tested for safety); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020) ("generalized allegations" that the defendant "represent[ed] that its vehicles and transmissions are of a particular standard, quality, or grade when they are not" was insufficient under Rule 9(b)); *cf. Vanzant*, 934 F.3d at 739 (allowing ICFA claim where plaintiff alleged that "prescription" language on packaging was deceptive). Plaintiffs argue that a reasonable consumer would understand a list of ingredients as being an exhaustive account of all of the chemical components in the Products. But that argument runs headlong into the preemption of any additional requirement to include benzene in the ingredients list.

19

As such, the ICFA claim is dismissed to the extent it relies on affirmative misrepresentations on the Products' labels.

The Court turns next to the alleged omissions. For the reasons previously discussed, to the extent that the ICFA claim rests on the omission of benzene from the ingredients list on the labels, it is preempted. But Plaintiffs also allege that the labels lack any warning about the presence of benzene in the Products. Compl. ¶¶ 92–94. Defendant says that Plaintiffs' failure to point to a particular statement on the labels regarding safety or purity that conveys a material omission is nothing more than a "general failure to disclose" and is thus fatal. *See Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose.").

But the reason that the omission-based claims in *Darne* failed was because there was no allegation that the buyers ever saw any allegedly deceptive communication concerning the products at issue. Indeed, the same was true in *De Bouse v. Bayer*, the Illinois Supreme Court case on which the *Darne* court relied. 922 N.E.2d 309, 316 (Ill. 2009) ("If there has been no communication with the plaintiff, there have been no statements and no omissions."). In contrast, Plaintiffs here allege that they relied on the Products' labels when they purchased them. And those labels allegedly did not include any warning about the presence of benzene in the Products. Such allegations do not give rise to the proximate cause issue present in *Darne* and *De Bouse*. Nor are they "vague accusations about inadequate disclosures," but specific

alleged omissions. *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018).

Defendant also cites *Castillo v. Unilever United States, Inc.*, No. 20 C 6786, 2022 WL 17976163 (N.D. Ill. Dec. 28, 2022), which is distinguishable in several respects. Similar to this case, the plaintiffs claimed that Unilever failed to disclose the presence of DMDM hydantoin in its TRESemmé products. *Id.* at *4. But that claim failed in the first instance because DMDM hydantoin was listed as an ingredient on the back label. *Id.* Moreover, to the extent the *Castillo* court held that *De Bouse* and *Darne* require a plaintiff alleging an omission-based ICFA claim to point to a particular statement on a product label that itself contains an omission, this Court respectfully disagrees.

### 3. Pre-Purchase Knowledge

However, the ICFA claim for the lack of warning on the labels fails for a different reason: Plaintiffs do not plead pre-purchase knowledge. For an ICFA claim based on alleged omissions, "plaintiffs must establish that the fact concealed was known to the seller at the time of concealment." *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 14 (Ill. App. Ct. 2001). Plaintiffs maintain that they have adequately pleaded Defendant's knowledge that the Products contained or risked containing benzene. Plaintiffs point to their allegation that "Defendant made no reasonable effort to test its Products for benzene, despite its claims that the Products' ingredients were tested for safety." Compl. ¶ 81. But that allegation, taken as true, is inconsistent with pre-purchase knowledge. That is, if Defendant did not test or did

21

not adequately test its Products for benzene, it is unclear how they would have known that the Products contained the substance. *See also id.* ¶ 95 ("Had Defendant adequately tested its Products for benzene and other carcinogens and impurities, it would have discovered that its Products contained benzene."). Similarly, the Valisure test results, which were published in October 2022, do not show pre-purchase knowledge as Plaintiffs purchased the Products in August 2021 and May 2022.

Plaintiffs also allege that Defendant's use of butane and isobutane as propellants in the Products put them on notice of the risk of benzene contamination because propellants are "derived from the same sources in the same facilities" as benzene, and a "large, sophisticated" manufacturer like Defendant understands the risk of contamination. Compl. ¶¶ 86–89. While Rule 9(b) allows that knowledge "may be alleged generally," Fed. R. Civ. P. 9(b), that "does not give [Plaintiffs] a license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 687. Viewing these allegations in Plaintiffs' favor, along with the allegations that Defendant did not test its Products for benzene, the Court cannot reasonably infer that Defendant knew that the Products contained benzene. As such, Plaintiffs do not adequately plead an ICFA claim based on the lack of warning about the presence of benzene on the Products' labels.

### 4. ICFA Unfair Practice Claim

That leaves the unfair practice claim based on the alleged adulteration of the Products with benzene. Defendant challenges the plausibility of that claim in reply. *See* R. 31 at 6. Because Plaintiffs have not yet had the opportunity to address this

22

argument, the Court denies the motion to dismiss this claim without prejudice. *See Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020).

IV.     Other State Consumer Protection Claims

Defendant challenges Plaintiffs' claims under nine other States' consumer fraud acts on several grounds. The Court previously addressed Defendant's Article III and statutory standing arguments as to these claims. Defendant's argument that the safe harbor provisions of certain States' consumer fraud statutes apply to bar Plaintiffs' claims is similarly unavailing. All of those safe harbor provisions are affirmative defenses. Therefore, for the same reasons that the ICFA's safe harbor provision did not warrant dismissal at this stage, the other States' safe harbor provisions do not warrant dismissal either.

Defendant also raises that the claim brought under Massachusetts' consumer fraud act requires dismissal for failure to give pre-suit notice. Plaintiffs respond there is no such requirement. *See Moronta v. Nationstar Mortg., LLC*, 476 Mass. 1013, 1014 (Mass. 2016) (explaining that under Chapter 93A, a plaintiff need not serve a demand letter if the prospective respondent either "[1] does not maintain a place of business or [2] does not keep assets within the commonwealth"). The Court agrees, and Defendant does not argue the issue in reply.

Lastly, Defendant argues that the omission-based claims fail for lack of pre-purchase knowledge, which Plaintiffs say was not "properly raise[d]." R. 26 at 17. But Defendant cites authority showing that each State's consumer fraud act requires pre-purchase knowledge. R. 14 at 16 n.8 (citing cases). And Defendant incorporates its

prior arguments regarding the lack of pre-purchase knowledge for the ICFA claim. *Id.* Thus, for the same reasons that the lack of pre-purchase knowledge requires dismissal of the omission-based ICFA claim, it requires dismissal of the omission-based claims under the other States' consumer fraud statutes.

V.     Warranty Claims

A.  Pre-Suit Notice

Defendant argues that the warranty claims should be dismissed for several reasons. The Court turns first to the argument that Plaintiffs did not give the required pre-suit notice. A plaintiff pursuing a breach of warranty claim must give the seller notice of the claimed breach within a reasonable time after he discovers or should have discovered it. *See* 810 ILCS 5/2-607(3)(a). Failure to notify is excused only through physical injury or "actual knowledge of the defect of the particular product." *Connick*, 174 Ill. 2d at 493.

For the actual knowledge exception to apply, a plaintiff needs to allege that the defendant was "somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id.* at 590. Here, Plaintiffs point to their allegation that Defendant, as a "large, sophisticated corporation in the business of manufacturing, distributing, and selling products containing aerosol propellants such as butane and isobutane, knew or should have known of the risks of benzene contamination." Compl. ¶ 88. But that generalized allegation that Defendant knew that its Products contained (or risked containing) benzene by virtue of its size, sophistication, and the nature of its business is not enough. *See Anthony v. Country*

24

*Life Mfg., LLC*, 70 F. App'x 379, 384 (7th Cir. 2003) (allegation that defendant "knew that its product contained" unwanted ingredients and "therefore knew of the defect" was insufficient); *In re Abbott*, 2023 WL 3585759, at *11 (allegation that defendant had notice of heavy metals in infant formula through "its manufacturing processes" was insufficient). In other words, Defendant's manufacturing processes do not plausibly suggest that it was "apprised of the trouble with the *particular product purchased by a particular buyer*," *Connick*, 675 N.E.2d at 494 (emphasis added), particularly where Plaintiffs allege that Defendant failed to adequately test for benzene.

Plaintiffs cite *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833 (N.D. Ill. 2008) and *Hedges v. Earth, Inc.*, No. 14 C 9859, 2015 WL 1843029 (N.D. Ill. Apr. 21, 2015), in which the courts held that pre-suit notice was not required given defendant's knowledge of the defects in the entire product line. However, as this Court explained in *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1054–55 (N.D. Ill. 2022), numerous courts have found these decisions inconsistent with Illinois law. Accordingly, because Plaintiffs did not provide Defendant with pre-suit notice, the motion to dismiss the warranty claims is granted.

However, even if the Court were to find that Plaintiffs satisfied the pre-suit notice requirement, they have failed to establish privity for either warranty claim, and the breach of express warranty claim is inadequately pleaded.

B. Express Warranty

To state a claim for breach of express warranty under Illinois law, a plaintiff must allege that "(1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) [the] seller guaranteed the goods would conform to the affirmation or promise." *Baldwin v. Star Scientific, Inc.*, No. 14 C 588, 2015 WL 170407, at *11 (N.D. Ill. Jan. 13, 2015). In general, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Gubala v. CVS Pharmacy*, No. 14 C 9039, 2016 WL 1019794, at *7 (N.D. Ill. Mar. 15, 2016). The allegations here fall short in several respects.

Beginning with the terms of the alleged express warranty, Plaintiffs generally refer to the "promises and affirmations and omissions of fact made by Defendant on its product packaging, labeling, and through marketing and advertising." Compl. ¶ 148. The only specific statements that Plaintiffs point to are those on Klorane's website that the Products should be "'spray[ed] evenly' on the hair, 'focusing at the roots,' and 'le[f]t on for 2 minutes' before being brushed" and are "suitable for even the most sensitive scalp." *Id.* ¶ 149.

Plaintiffs do not allege that they read the website before they purchased the Products. *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019) (dismissing express warranty claim where "plaintiff has not alleged that she ever saw the statement on the website before making her purchase"). Plaintiffs respond that the "crux" of their case is about the alleged misrepresentations and omissions on the label. And they generally allege that they "read and relied on one or

26

more of the express warranties provided by Defendant in the label, packaging, and written advertisements in deciding to purchase the product." Compl. ¶ 150. But only one of the statements appears in the image of the label that appears in the Complaint: the instruction to leave the product on the hair for two minutes. *Id.* at ¶ 100; *cf. Gubala*, 2016 WL 1019794, at *7 (holding that plaintiff plausibly alleged express warranty claim where the complaint "describe[d] the alleged representations from the product label on which Plaintiff allegedly relied"). Further, Plaintiffs do not assert that the Products deviate from those instructions for use. In other words, Plaintiffs do not claim that the Products are incapable of being left on the hair for two minutes. And while Plaintiffs assert that the statements expressly warrant that the Products are free from benzene, the statements do not mention benzene, carcinogens, byproducts, or the safety of the Products at all.

A breach of express warranty claim also requires privity of contract. Defendant argues that there is no privity because Plaintiffs purchased the Products through third-party retailers. But there is an exception if a manufacturer "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiff." *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 762 (N.D. Ill. 2022) (citation omitted). As previously stated, Plaintiffs have not plausibly alleged that the statements on the website were the basis of their bargain. *Cf. id.* (applying exception where plaintiffs viewed and relied on statements on packaging and website that dog foods were "grain-free" and had "no chicken" and "no

wheat, corn or soy"). Accordingly, Plaintiffs have not adequately pleaded their express warranty claim.

### C. Implied Warranty

As with a breach of express warranty claim, a breach of implied warranty claim requires privity of contract. *Manley*, 417 F. Supp. 3d at 1125. The third-party beneficiary exception to privity applies where the manufacturer "knew the identity, purpose and requirements of the customer and manufactured or delivered the goods specifically to meet those requirements." *Redmon v. Whirlpool Corp.*, No. 20 C 6626, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020) (citation omitted). However, this exception does not fit these circumstances. Plaintiffs do not allege that Defendant manufactured the Products "to [their] specifications and sold it to [them] through a middle man." *Manley*, 417 F. Supp. 3d at 1124. Instead, Plaintiffs allege that they "picked it up off the shelf," so to speak, at Ulta and Birchbox.com. As such, Plaintiffs have not shown that an exception to privity applies for their breach of implied warranty claim.

### VI.   Unjust Enrichment Claim

Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed because it is predicated on the same conduct as the claims under the ICFA and other States' consumer fraud statutes. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and of course, unjust enrichment will stand or fall with the related claim.")

Because Plaintiffs have adequately pleaded claims under the ICFA and States' consumer fraud acts based on the alleged adulteration of the Products with benzene, the unjust enrichment claim remains viable.

## Conclusion

For the reasons stated above, Defendant's motion is granted in part and denied in part. The Court grants the motion to dismiss claims that rely on the alleged misrepresentations and omissions on the Products' labels and the warranty claims. The Court denies the motion to dismiss claims that rely on the alleged sale of adulterated Products and the unjust enrichment claim. If Plaintiffs believe they can remedy the defects identified in this Opinion and Order, they may file a proposed amended complaint and redline showing the changes made, as well as a memorandum no greater than five pages explaining why the amended complaint cures the defects, on or before July 18, 2023. Otherwise, Defendant must answer the surviving claims by July 25, 2023.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: June 27, 2023